## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 27 2020, 8:20 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.R., et al. (Minor Children)

and

C.T. (Mother) and J.R. (Father),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

April 27, 2020

Court of Appeals Case No. 19A-JT-1946

Appeal from the Wayne Superior Court

The Honorable Mary G. Willis, Senior Judge

Trial Court Cause Nos.
89D03-1901-JT-1
89D03-1901-JT-2
89D03-1901-JT-3

**Bailey, Judge.**

# Case Summary

[1] J.R. ("Father") and C.T. ("Mother") appeal the termination of their parental rights to A.R., Mad. R., and Mac. R. ("Children"), upon the petition of the Wayne County Department of Child Services ("the DCS"). They present a single issue for review: whether the DCS established, by clear and convincing evidence, the requisite statutory elements to support the termination decision. We affirm.

# Facts and Procedural History

[2] Father and Mother had three children, born in 2012, 2013, and 2015. The DCS became involved with the family in October of 2014, after receiving a report of heroin use in the home. Mother, Father, and the DCS entered into an informal adjustment agreement with a provision that Father seek substance abuse treatment.

[3] On February 17, 2015, Mother was seven months pregnant with the youngest child when she and Father used heroin together. Father overdosed and nearly died. Both parents were arrested and charged with Neglect of a Dependent, upon allegations that they had injected drugs in the presence of their children. The DCS took custody of A.R. and Mad. R. and, on February 18, 2015, alleged that they were Children in Need of Services ("CHINS"). After the birth of Mac. R., the DCS filed an additional CHINS petition. The Children were

adjudicated CHINS, based upon the admissions of Mother and Father that they had pending criminal charges and substance abuse issues.

[4] In July of 2015, Father was referred to in-patient substance abuse treatment, but he did not report for treatment. In September of 2015, Father was arrested on a burglary charge.

[5] Mother was provided referrals to various services, including: detox at Harbor Lights (a Salvation Army facility), a substance abuse assessment, a psychological assessment at Youth Opportunity Center, home-based services by Lifeline, in-patient drug treatment at Tara House, individual counseling at Meridian Services, a parental assessment by Extra Special Parents, intensive out-patient treatment, residential treatment at Volunteers of America and parenting time supervision.

[6] Mother was largely non-compliant with services. She attended a two-week detox program but declined the recommendation for immediate in-patient treatment. She later completed a two-week program at Tara House but failed to participate in follow-up treatment. She attended some parenting time sessions but was frequently late or absent; on one occasion, she ended the session early, reporting that she was "dope sick." (Tr. Vol. II, pg. 23.) Mother was terminated from the visitation program for non-compliance. She did not provide the clean drug screens necessary for the resumption of parenting time. During the CHINS proceedings, Mother was arrested multiple times for drug-related charges and theft.

[7]     Over the years, the DCS filed multiple petitions for termination of parental rights. Initially, the trial court denied the petitions. In March of 2019, the trial court conducted a hearing at which Father appeared (in the custody of the Indiana Department of Correction, "the DOC") and Mother did not appear, and the court granted the termination petition as to Mother only. However, on April 5, 2019, Mother appeared in open court and the trial court set aside its judgment and appointed counsel for Mother.

[8]     On May 2, 2019, both parents appeared at a fact-finding hearing upon the termination petitions. The trial court heard testimony from Father, Mother, family case manager Terri Witham ("Witham"), and foster parent R.E. ("Foster Mother"). Father testified that he expected to be released from the DOC in April of 2020. He had last had contact with the Children in September of 2015. Mother testified that she was also incarcerated. She estimated that she had last seen the Children two years earlier.

[9]     Witham testified regarding Mother's arrest record and participation in services. She further testified that Mother last saw the Children in August of 2016. According to Witham, the youngest two children did not remember their parents. Witham opined that the Children were happy in their foster home, where they had been placed since June 18, 2015, and were bonded to their foster parents, who wished to adopt them. Witham also disclosed that Foster Mother had reported an inappropriate touching incident involving Foster Mother's eleven-year-old son, S.E., and then-four-year-old Mad. R.

[10] Foster Mother testified and described the incident and response. She had entered a tree house to find S.E. lying on his stomach and Mad. R. lying on S.E.'s back. Foster Mother questioned Mad. R. and Mad. R. disclosed "he touched my pee pee and I touched his pee pee." *Id.* at 133. Foster Mother reported the incident to Witham, who reported the incident to law enforcement authorities. No charges were filed against S.E., but he participated in individual counseling therapy until the therapist released him. Each of the children in the foster home was forensically interviewed, and it was revealed that there may have been one earlier touching incident around the same time frame. New safety measures were implemented in the foster home; that is, door alarms and baby monitors were installed, and the children were no longer playing without adult supervision. The DCS notified the Court Appointed Special Advocate ("the CASA") and the CASA agreed with DCS caseworkers that the safety measures were adequate. Additionally, Mad. R. was provided a psychological assessment, but the therapist did not find Mad. R. to be exhibiting symptoms of trauma or in need of individual therapy. After five days of removal, the Children were returned to their long-term foster home.

[11] At the termination hearing, Mother and Father requested that the Children be moved to a different foster placement. However, neither suggested that, after four years of foster placement, the Children could return to parental care. The trial court terminated Mother and Father's parental rights and within its order included language acknowledging that a safety plan had been implemented for

the Children. On December 10, 2019, this Court granted Mother's and Father's motion to file a belated appeal.

# Discussion and Decision

## Standard of Review – Sufficiency of the Evidence

When we review whether the termination of parental rights is appropriate, we will not reweigh the evidence or judge witness credibility. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016). We will consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* In so doing, we give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010) (citing Indiana Trial Rule 52(A)). We will set aside the trial court's judgment only if it is clearly erroneous. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1229 (Ind. 2013). In order to determine whether a judgment terminating parental rights is clearly erroneous, we review the trial court's judgment to evaluate whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *I.A.*, 934 N.E.2d at 1132.

## Requirements for Involuntary Termination of Parental Rights

"The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children." *In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014). Although parental rights are

of a constitutional dimension, the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). The State is required to prove that termination is appropriate by a showing of clear and convincing evidence, a higher burden than establishing a mere preponderance. *In re V.A.*, 51 N.E.3d at 1144.

[14] Indiana Code section 31-35-2-4(b)(2) sets out the elements that the DCS must allege and prove by clear and convincing evidence to terminate a parent-child relationship:

> (A)    that one (1) of the following is true:
>
> > (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
> >
> > (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
> >
> > (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;
>
> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons

for placement outside the home of the parents will not be remedied.

(ii)     There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)    that termination is in the best interests of the child; and

(D)    that there is a satisfactory plan for the care and treatment of the child.

[15]    Mother and Father contend that the DCS failed to present sufficient evidence as to subsections (C) and (D).

[16]    Mother and Father argue that it is not in Children's best interests to remain in a pre-adoptive home where an older child has engaged a younger child in inappropriate touching. They seek to challenge placement, but the ultimate conclusion to be made by the trial court concerned termination of parental rights. The relevant statute requires clear and convincing evidence that *termination* is in the best interests of a child, not that a particular placement be in the best interests of a child. *See id.* (emphasis added). That said, however, a child's well-being in foster care is not irrelevant, because the court must look to the totality of the evidence in determining what is in a child's best interests. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*.

[17]    By the time of the termination hearing, the Children had been removed from parental care for more than four years, they had not seen Father in four years, and had not seen Mother in almost three years. There was ample evidence that

neither Mother nor Father could resume the parental role. Indeed, Mother testified that she was "not trying to get back custody at this moment." (Tr. Vol. II, pg. 139.) Parental participation in services had been minimal. Over the course of the CHINS proceedings, Mother had been frequently incarcerated on multiple drug possession and theft charges, and Father had remained continuously incarcerated since September of 2015.

[18] The Children's caseworker testified that each of the Children had thrived in their foster care placement and the youngest two children did not remember Mother and Father. She also testified that the foster parents had immediately reported and addressed the inappropriate touching incident, obtained forensic interviews for all children in the home and individual counseling for S.E., and implemented a safety plan approved by the DCS and the CASA. The CASA recommended termination of Mother's and Father's parental rights. To the extent that Mother and Father challenge the trial court's factual finding on the adequacy of the safety plan, they improperly request reweighing of evidence. *In re V.A.*, 51 N.E.3d at 1143. The totality of the evidence supports the trial court's findings and the findings support the conclusion that termination of parental rights is in the best interests of the Children.

[19] Additionally, in order for a trial court to terminate a parent-child relationship, the trial court must find that there is a satisfactory plan for the care and treatment of the child or children. *See In re D.D.*, 804 N.E.2d 258, 268 (Ind. Ct. App. 2004), *trans. denied*. This plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-

child relationship is terminated. *Id.* Mother and Father acknowledge that a plan for adoption, without greater specificity, is generally a sufficient plan. But they consider the order here to be akin to approval of a specific adoption, which they deem to be unsatisfactory because of the incident of inappropriate touching.

[20] Ultimately, the DCS may give consent, pursuant to Indiana Code Section 31-19-9-1, to adoption of the Children by their current foster parents or another adoptive parent. Here, however, the litigated issue was the propriety of the termination of parental rights and not the propriety of an adoption. It is the trial court's duty to give a plain and ordinary meaning to language used in a statute. *Indiana Patient's Compensation Fund v. Anderson*, 661 N.E.2d 907, 909 (Ind. Ct. App. 1996), *trans. denied.* The termination statute requires the existence of a satisfactory plan but does not require that the DCS identify a prospective adoptive parent or assure the trial court that a particular plan will come to fruition. And the termination statute does not confer upon parents a right to challenge a specific pre-adoptive or adoptive placement. Here, with an adequate evidentiary basis, the trial court found the existence of a satisfactory plan.

# Conclusion

[21] The DCS established by clear and convincing evidence the requisite elements to support the termination of parental rights.

[22]   Affirmed.

Crone, J., and Altice, J., concur.